IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **THOMAS KELLY** | : | |
| 6584 Abingdon Hall | : | Case No. 1:17-cv-320 |
| Morrow, Ohio 45152 | : | |
| | : | Judge _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **ACCOUNT CONTROL TECHNOLOGY, INC.** | : | **COMPLAINT WITH JURY DEMAND** |
| 5300 Kings Island Drive | : | |
| Mason, OH 45040 | : | |
| | : | |
| **Serve:** CT Corporation System | : | |
| 4400 Easton Commons Way | : | |
| Suite 125 | : | |
| Columbus, OH 43219 | : | |
| | : | |
| Defendant. | : | |

For his Complaint against Account Control Technology, Inc., Plaintiff Thomas Kelly states as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Thomas Kelly ("Kelly") is an individual residing in Morrow, Ohio. At all times relevant, Kelly was an employee of Account Control Technology, Inc. (hereinafter "ACT") as that term is defined in 29 U.S.C. § 203. Kelly was also an eligible employee as that term is defined in the Family and Medical Leave Act, 29 U.S.C. § 2611 ("FMLA").

2. Defendant ACT is a California corporation conducting business in Mason, Ohio. ACT is an employer within the meaning of 42 U.S.C. § 12111, Ohio Rev. Code § 4112.01, and 29 U.S.C. § 2611.

3. This Court has jurisdiction over Count I pursuant to 28 U.S.C. § 1331 because the claims are based on federal law.

4. Venue is appropriate in the Southern District of Ohio pursuant to 28 U.S.C. § 1391(b) because a substantial amount of the conduct giving rise to Kelly's claims occurred within the Southern District of Ohio.

### FACTUAL ALLEGATIONS

5. Kelly began his employment with ACT as a collections manager in July 2012.

6. Kelly was a highly successful collections manager for ACT, leading his team to meet or exceed collection goals and receiving positive feedback from his supervisors. In over 90% of the months Kelly was with ACT, he received a monthly bonus in recognition of his team's meeting or exceeding performance goals.

7. Kelly suffers from a serious health condition. In or about 1991, Kelly was diagnosed with herniated discs in his back. Kelly underwent three surgical procedures in 1992, 1994, and 1996 to remedy the slipped discs, which successfully abated the pain and other effects for a period of time.

8. In or about March 2016, Kelly began to suffer from increased pain and discomfort related to his herniated discs. On an intermittent basis, Kelly was having difficulty standing, ambulating, and performing general daily tasks.

9. Beginning in March 2016, Kelly's serious medical condition required him to schedule more appointments with his physician for the diagnosis and treatment of his slipped discs. Kelly used his lunch hours and paid time off to attend his appointments. Even though Kelly was using his accrued leave in accordance with ACT policy, his supervisor, Mike

2

Havarilla, threatened in or about May 2016 that Kelly would be terminated if he continued to take time off for doctor's appointments.

10. Afraid that he would be terminated for his use of leave, Kelly tried to make appointments during his lunch break as much as possible to avoid the use of paid leave. When it became too difficult to schedule his necessary appointments during lunch, Kelly contacted ACT's human resources department and requested the necessary paperwork to apply for FMLA leave.

11. In August 2016, Kelly followed ACT's procedures to apply for intermittent leave under the FMLA. Kelly's condition required him to attend multiple medical appointments. Kelly's physician also recommended that he be permitted to take intermittent leave due to the pain caused by his serious medical condition, which occasionally limited his ability to move and function normally. Kelly and his physician completed and submitted all paperwork required by ACT.

12. In September 2016, Kelly went to ACT's HR representative, Stephanie Dill, to request leave under the FMLA to attend a doctor's appointment. In response to the request, Ms. Dill and Claudia Holton, HR Director, falsely claimed that they had not received Kelly's initial FMLA request and required him to have his doctor complete another request.

13. In September 2016, after Kelly completed his second request for FMLA leave, he was called into a meeting with Ms. Holton and Junior Sanchez, ACT's Director of Operations. Sanchez and Holton told Kelly that, if he used any FMLA leave, they would prorate both his pay and monthly bonus, reducing both by the percentage of time in each month that he took FMLA leave.

14. Kelly's monthly bonus was calculated based on the ratio of money collected by collections specialists working on his team to the monthly goal set for their collections. Because it was based on collections figures rather than time worked, Kelly's bonus had never been reduced when he used vacation or other forms of time off.

15. No other collections manager had their wages or bonus payment reduced due to the use of approved time off.

16. Kelly took FMLA leave in December 2016 and January 2017.

17. In January 2017, Mr. Havarilla told Kelly that he was being put on a corrective action plan for the number of days he had missed in December and January. When Kelly stated that his leave was protected under his approved FMLA leave, Mr. Havarilla denied that Kelly had approved FMLA leave and said that ACT's human resources department had "no record of it." Concerned that his FMLA rights were being violated, Kelly asked Mr. Havarilla if he needed to retain a lawyer to take his FMLA leave. The next day, Mr. Havarilla told Kelly that human resources had "found" his FMLA paperwork.

18. In or about February 2017, Kelly learned that he would need to have another back surgery at some point in the future that would require his use of leave. Kelly told Mr. Havarilla that he would need to use FMLA leave in the future to have that surgery.

19. Beginning in February 2017, ACT management began issuing verbal and written discipline to Kelly for alleged procedural violations and performance issues. One disciplinary action was the result of a company-wide performance failure for which all collections managers were disciplined at the same time. The remaining issues for which Kelly was disciplined were routine practices for which other similarly situated collections managers who did not take FMLA leave were not disciplined.

20. Kelly received more disciplinary actions in the three months after he began taking FMLA leave than in the four previous years of his employment with ACT.

21. On or about March 8, 2017, Mr. Havarilla told Kelly that he was being disciplined for allegedly falsifying records by clocking an employee in before she began their shift. Kelly explained that the alleged discrepancy was the result of using a manual override procedure in the clocking system that resulted in showing the correct number of hours an employee worked, but not the exact times that their shift began and ended. Mr. Havarilla refused to rescind the discipline.

22. On March 17, 2017, ACT terminated Kelly's employment based on the same unfounded falsification claim for which he had received written discipline already on March 8, 2017.

23. Kelly had been instructed by Ms. Dill to use the manual override procedure for employees who forgot to clock in or out, and she had personally shown him how to perform it. Other collections managers used the same procedure and were not disciplined, even when the timecards were found to be inaccurate as a result.

24. On information and belief, after Kelly's termination, Ms. Holton met with the employee whose timecard Kelly had allegedly "falsified." Ms. Holton told her that ACT's review showed that she had worked the number of hours she was paid for even though the exact clock in and clock out times were incorrect. The employee was not disciplined for approving her timecard as modified by Kelly; in fact, ACT retroactively rescinded the disciplinary points she had received for attendance during the period in question.

25. Kelly was selectively disciplined and terminated due to his past and impending future use of FMLA leave.

**COUNT I**

26. Kelly repeats the allegations in paragraphs 1 through 25 of the Complaint as if fully restated herein.

27. Kelly was an eligible employee under the FMLA, 26 U.S.C. § 2601, et seq. ACT employed him for at least 12 months and he worked in excess of 1,250 hours in the previous twelve months.

28. ACT is a covered employer under the FMLA because it employs 50 or more employees within 75 miles of Kelly's workplace.

29. Kelly was entitled to leave under the FMLA due to his serious health conditions. These are chronic conditions, as well as permanent or long-term conditions, and Kelly was under continuing treatment by a healthcare provider.

30. Kelly gave ACT enough information to apprise it of his need for leave due to his serious health conditions.

31. ACT interfered with Kelly's FMLA rights by threatening to terminate him for attending doctor's appointments, delaying the processing of his FMLA leave request, threatening to reduce his compensation if he used FMLA leave, penalizing him for using FMLA leave until he threatened to retain an attorney, issuing him an unfounded discriminatory discipline following his use of FMLA leave, and ultimately terminating his employment.

32. As a result of ACT's violations of the FMLA, Kelly has incurred damages, including lost wages, benefits, and other compensation. Because ACT acted in bad faith, Kelly is entitled to recover liquidated damages in an amount equal to her lost wages, benefits, and other compensation.

**WHEREFORE,** Plaintiff Thomas Kelly demands judgment against Defendant Account Control Technology, Inc. as follows:

1. An award of back pay in the amount he would have earned from the date of his wrongful termination until the date of judgment, including wages, benefits, and prejudgment interest;

2. An equal amount in liquidated damages;

3. Reinstatement, or if reinstatement is not deemed appropriate, an award of front pay equal to the amount he would have earned from the date of judgment forward;

4. An award of attorney fees and costs; and

5. An award of all other legal and equitable relief to which he may be entitled.

## Jury Demand

Plaintiff Thomas Kelly, by and through counsel, demands a trial by jury on all matters so triable.

Respectfully submitted,

/s/ Robert A. Klingler
Robert A. Klingler (0031603)
Michael P. Richardson (0089496)
ROBERT A. KLINGLER CO., L.P.A.
525 Vine Street, Suite 2320
Cincinnati, Ohio 45202-3133
Telephone: (513) 665-9500
Facsimile: (513) 621-3240
Email: rak@klinglerlaw.com
mpr@klinglerlaw.com
*Attorneys for Plaintiff Thomas Kelly*